STATEMENT OF OBJECTIONS

FILED
JAN 14 2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

------------------------------------------------------------ x
In re Settlement Agreement: 66-cv-1459 (N.D. Ill. )
CHA HOUSING DISCRIMINATION:            )
                                       )
                                       )   Case Number: 66 C 1459
                                       )   Hon. Marvin E. Aspen
                                       )
-----------------------------------------------------------x

Statement of Objections

I am a member of the plaintiff class in the case called *Gautreaux v. Chicago Housing Authority*, et al., 66-cv-1459 (N.D. Ill.). I am a class member because I am an African-American who is also an applicant for public housing (CHA) in the City of Chicago. I am currently homeless; however I receive mail at 1015 W. Lawrence Ave, Chicago Il. 60604.

I object to the settlement in this lawsuit. My reasons for objecting are:

1. The proposed settlement does not specifically address the concerns of the class represented in the original action, the subject of the core claims in the case. The proposed settlement actually validates the CHA's continued discriminatory practice, enabling Chicago Housing Authority to illegally discriminate against African-Americans under the guise of "race-neutrality"; and

2. Instead of addressing the core claims in the case, the settlement as currently prescribed merely provides that the CHA "aspire" to adhere to requirements of federal law as reflected by Judgment Order Injunction; and

3. CHA has forgone its **prima facie duty** in Chicago. This as Chicago's 2016 segregation index for African-Americans remains high, with 76 percent of the region's African-Americans required to move to reach complete integration in 2016, per Chicago Urban League Research and Policy Center Executive Director Stephanie Schmitz Bechteler. Bechteler noted that segregation remains today almost everywhere that saw an influx of African-Americans from the South during the Great Migration. And while she noted that the more obvious segregationist housing policies have been done away with in the 50 years since Congress passed the Fair Housing Act, "we still have other policies and practices that have happened since the 1970s that help to perpetuate segregation."; and

4. The settlement agreement limits housing options, particularly for African American residents, due to the fact that upon receiving a Housing Choice Voucher (HCV) allowing tenets or perspective tenets to secure safe clean and affordable housing there is no guarantee that a HCV holder can find housing that is *not* discriminatory either de facto or de jure. Essentially this creates a private citizen form of racial discrimination that is unlikely to be discovered by CHA or HUD because the perpetrators of such acts are

not enjoined with the CHA nor HUD. While private actors are not to be construed as partners in the CHA and HUD attempts to remove discriminatory practices from the CHA housing program(s), the agency cannot ensure the discriminatory practice will not be applied by private actors. Since we cannot realistically drop the HCV program to avoid this limitation, it does call into question the reason why we cannot take advantage of the mobility that the option promulgates; and

5. CHA's Choose to Own Homeownership Program (CTO) is not currently listed in the settlement agreement as a means to assist current and future CHA residents to procure safe clean and affordable homes. The caveat being that a mortgage is often a more reasonable, cost effective, and stable way to ensure that CHA residents receive safe clean housing than does a rental unit either in a CHA owned property or via a HCV; and

6. The current proposed settlement agreement does not include "co-op" property purchase (via a Bank or Credit Union) as a viable option for tenets to secure long term or even generational housing security; and

7. The CHA and BPI elect to have the pending case **dismissed with prejudice** which means that it is **dismissed** permanently. This - as both parties *(BPI v. CHA)* own admission there are still many benchmarks left to be addressed, while there are few if any guarantees that these benchmarks will not again marginalize African-American community members; and

8. The settlement terms would include specific goals and benchmarks for CHA developments currently in process or a framework for future developments not currently on the "drawing board." Finally, the settlement agreement would have a finite, foreseeable end date, after which all plaintiffs and court oversight would end. The parties acknowledge that the terms must be designed to provide CHA with flexibility to adjust and be responsive to changes in circumstances; and

9. The release will not allow me to protect against mistreatment by Chicago Housing Authority directly or indirectly. It purports to cover all CHA rules and conduct that were in place upon preliminary approval, and all future rules and future conduct that are substantially similar to rules and conduct in place at preliminary approval. These rules are unfair and continue to cause problems for countless current and future CHA residents, and HCV recipients; and

10. Based on the outcome of the settlement, we do not believe the lawyers who negotiated it represented our best interests.

My personal information is:
Name: ___*Paul H. Pearson*_____
Mailing Address: ___1015 W Lawrence Ave. Chicago, IL. 60640_____
Phone No.: ____773-744-2810_____