IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOROTHY GAUTREAUX, ET AL, | ) | |
| MAISHA IMANI HAMILTON, on behalf of herself | ) | |
| and others who are similarly situated | ) | Case Number: 66 C 1459 |
| | ) | Consolidated w/ 66 C 1460 |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | Hon. Marvin Aspen |
| UNITED STATES DEPARTMENT OF HOUSING | ) | |
| & URBAN DEVELOPMENT, CITY OF CHICAGO, | ) | Re: Emergency Motion |
| CHICAGO HOUSING AUTHORITY, CEO TRACY | ) | |
| SCOTT, COO JAMES BEBLEY, MICHAEL HARRIS, | ) | |
| THERESA DENT, DAVITA HEARD | ) | Room 1903 |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF HAMILTON'S MOTION FOR EMERGENCY TRANSFER TO
SAFETY FROM CHA STAFF-TENANT CONSPIRACY WITH UNNAMED
OTHERS TO CAUSE HAMILTON TO BE FALSELY ARRESTED OR KILLED
BY GAS STOVE LEAK AND PLEA FOR FBI TO INVESTIGATE MATTER**

NOW COMES Plaintiff, Maisha Imani Hamilton, Ph.D., proceeding pro se, to

move this court to order Chicago Housing Authority (hereinafter "CHA") to transfer her

without delay, at CHA's expense, out of Vivian Gordon Harsh Apartments (hereinafter

"VGHA"), and outside of Chicago to safe and confidential housing, where Plaintiff would

be secure in her person, house, papers, and effects against unreasonable searches and

seizures, as guaranteed by 4th Amendment to the U.S. Constitution, and where Plaintiff

would not be deprived of life, liberty, or property by being falsely arrested for a

fabricated crime or killed by a natural gas leak and/or by carbon monoxide poisoning

orchestrated by (former CHA building managers, Theresa Dent and/or Davita Heard,

and/or by unknown others, and executed by Plaintiff's neighbor, Freddie Simon and/or

his guests, or by her neighbor, Robert Leah and/or his guests, and/or any other persons,

known or unknown to Plaintiff, in violation of federal and state laws, including 18 U.S. Code § 241– Conspiracy against rights, and/or 18 U.S. Code § 1111–Attempted Murder, and/or 18 U.S. Code §1030–Fraud and related activity in connection with computers, by one or more persons entering Plaintiff's apartment an unknown number of times on unknown dates, and tampering with her stove in order to cause a gas leak and cause Plaintiff to die, and in support thereof, Plaintiff states as follows:

1. Plaintiff incorporates by reference into instant motion, Doc #833 **[EXHIBIT A]**, including exhibits **[EXHIBITS B, C & D]**, which was filed September 27, 2019: **Emergency Motion for Emergency Transfer from CHA Public Housing, Where Plaintiff Lives in Constant Fear for Her Life and Safety and Security of Her Property, to a Mixed-Financed Development on the North Side, a Gautreaux Goal**.

2. On July 16, 2019 and/or on September 22, 2019, Peoples Gas technicians stated that the amount of damage to the gas stove connector found on July 16, 2019 could not be explained by normal wear and tear of the stove, and that it would take a lot of banging the stove into the wall in order to cause so much damage to the flexible gas connector, and that foul play might be involved. Given the fact that unknown others have access to Plaintiff's apartment in her absence, Plaintiff concluded that one or more unknown persons had entered her apartment in her absence and damaged the flexible connector between the gas line and the stove deliberately in order to harm Plaintiff. See **[Exhibit B]**. Hamilton later learned that CHA VGHA building managers told Peoples Gas that Hamilton did not pay the gas bill and was not allowed to call for services.

3. Within a day or two after July 16, 2019, CHA maintenance replaced the stove and the damaged flexible connector with a new stove and a new flexible connector.

4.  On September 22, 2019, Plaintiff smelled gas and she called the Chicago Fire Dept, hereinafter, ("CFD") who came out to examine the situation. When the firemen turned on their hand-held gas monitors, Plaintiff could hear beeps, which indicated accumulation of gas in the air. Without telling Plaintiff whether or not there was a gas leak in her unit, the firemen turned off the gas coming into her unit and walked out. Plaintiff called Peoples Gas to come to her apartment to investigate. The Peoples Gas technician tested the stove without turning on their hand-held meters, and left, telling Plaintiff no gas leak was detected. See **[EXHIBIT A]**.

5.  Plaintiff's apartment continued not to be secure from others entering therein without her knowledge and consent. Plaintiff continued to lock her door with a key and leave out, and continued to return one or more times to find her door unlocked. One or more times, Plaintiff saw an intruder exiting her premises as Plaintiff emerged from the stairwell. Management continued to disregard Plaintiff's complaints about unlawful entries to her apartment by repeating their false claim, "Nobody is entering your apartment while you are away." Upon information and belief, intruders, including Theresa Dent, seized and destroyed surveillance videotapes that Plaintiff had acquired over the years that evidenced unlawful entries into her apartment in her absence.

6.  Plaintiff purportedly has a double lock on her door, however, upon even cursory examination of the mechanisms of the lock, it can be seen that only the dead bolt part of the lock works and the other components of what was originally installed as a double lock has been hollowed out leaving only open space. Plaintiff's safety issues have not been resolved, or even addressed during the eleven months since Plaintiff filed Doc #833, referenced in paragraph #1 above. See **[EXHIBIT A]**.

7.  On August 5, 2020, Plaintiff was cooking oatmeal on the front right burner of her one-year old stove, which had a 30-year guarantee. The water in the pan boiled over onto the flame that was cooking the oatmeal, and the flame sputtered but continued to burn. Plaintiff turned off the burner on the stovetop and the flame continued to burn in mid-air without any connection to burner. Plaintiff turned off the gas coming into her apartment, and the flame on her stovetop continued to burn for awhile and then sputtered off. Plaintiff called Peoples Gas.

8.  On August 5, 2020, Plaintiff called Peoples Gas to come to her apartment to examine her stove and advise her what needed to be done to fix the problem. The dispatcher asked Plaintiff if she was responsible for paying the gas bill. Plaintiff does not write a check directly to Peoples Gas, however, she reasonably believes that all operating expenses for her 120-unit building, including cooking and heating gas are calculated as part of the rent that each tenant pays. However, Plaintiff was anxious at the time she spoke with the dispatcher, and was not thinking clearly, and Plaintiff stated, "No" to the question of whether or not she paid the gas bill. The dispatcher started making excuses about not being able to send anybody out to examine her stove per instructions of the landlord who pays the bill.

9.  Plaintiff continued to tell the dispatcher about her gas problem, and when Plaintiff stated that she had turned off the gas to the burner on the stovetop and the flame was still burning in mid-air, the dispatcher said she would send a technician to the premises right away.

10.  When the Peoples Gas technicians (two) arrived at Plaintiff's building, Ms. Heard met them in the lobby and tried to turn them away before they could take the elevator to Plaintiff's unit and check out her stove. Plaintiff waited for the technicians in

the hall on the 11th floor across from the elevator.  She insisted that they come to her unit, and they did.

11.  The Peoples Gas technician found that gas was flowing into the burners on the stovetop when the knobs were in the off position, and that a gas leak could be detected in the space between the stove and the wall. Peoples Gas disconnected the stove and capped off the flexible connector so that no gas would flow into the kitchen stove. The next day, CHA installed a new stove and a new flexible connector.

12.  On August 7, 2020, Plaintiff went to a hospital emergency room to see if any damage had been done to her heart or lungs by her exposure to the natural gas leak. Thankfully, the negative effects of exposure to gas had dissipated by August 7th.

13.  Plaintiff had a house sitter during only part of the time that she was at the hospital. When Plaintiff arrived at home in the wee hours of the morning on August 8, 2020, her neighbor, Freddie Simon, a person who is known to Plaintiff to have unauthorized keyed access to Plaintiff's apartment, was standing in the hall outside Plaintiff's door, listening to his doorbell intercom. Plaintiff heard the words, "she's here," come across the intercom.

14.  Plaintiff will never be safe living in the VGHA building so long as other people have keyed access to her unit each and every time she leaves her unit unattended for even a few minutes.

15.  CHA's Portfolio Manager, Michael Harris has knowledge of the facts in this matter and has turned a blind eye to solving the root problem. Mr. Harris made an untenable offer for Plaintiff to turn in her key to her current apartment, and pack all of her belongings on a CHA moving truck, and move to a different CHA building prior to signing a new lease, take a document, which was not described to Plaintiff with any

specificity, to the new building, and if she brought the correct document, she could sign a lease and move in, and if she did not bring the right document, her furniture and possessions would be unloaded from the CHA truck and abandoned, and Plaintiff would be on her own. Plaintiff declined the offer and remained in the same building without a reliable lock on her door.

16. General Counsel Chery Colston has knowledge of the facts in this matter based on a number of emails from Plaintiff and has turned a blind eye to Plaintiff's plight. U

17. Plaintiff is currently litigating a personal injury lawsuit against JPMorgan Chase & Co. (hereinafter, "Chase") in federal court, Case No. 19-cv-05590. Chase is represented by Stone & Johnson, Chartered lawyers Richard A. Valek and Christian Ambler. Said lawyers and law firm also provide counsel to Broadspire, Chase's Third-Party Administrator for its Workers Compensation Plan

18. Plaintiff is requesting that the FBI investigate the involvement in attempts to murder Plaintiff, and/or cause Plaintiff to be falsely arrested, and/or hack Plaintiff's computers by Broadspire, a Crawford Company, and Third Party Administrator for JPMorgan Chase & Co.'s Workers Compensation Plan or by Broadspire's counsel in CHA's conspiracy against Plaintiff's rights as guaranteed by the Constitution and laws of the United States, and specifically in violation of 18 U.S. Code §241–Conspiracy against rights, and of 18 U.S. Code § 1111–Murder, and of 18 U.S. Code §1030–Fraud and related activity in connection with computers.

19. For approximately three years, Plaintiff feels as if she has been falsely imprisoned in her unit, unable to shop for groceries or go to the laundry room to wash clothes, or visit with friends outside her building or even with friends on other floors in

her building, or go to building meetings, or go to the computer room, or go pick up fruits and vegetables or commodity boxes, or even go to the first floor to check her mailbox.

20. This motion is an emergency due to the fact that Plaintiff lives in constant fear that CHA, either through malice or through willful and wanton negligence, will cause Plaintiff to be killed by carbon monoxide poisoning consequent to CHA either knowingly giving access to Plaintiff's apartment to one or more persons who wish to harm or kill Plaintiff, and/or consequent to CHA ignoring unlawful entries by one or more persons into Plaintiff's apartment, who thereby acquired access to Plaintiff's gas stove therein during one or more times that Plaintiff was absent from home.

RELIEF REQUESTED

Whereas CHA is unable and/or unwilling to protect Plaintiff's life and safety, Therefore, Plaintiff is requesting a transfer from VGHA to a mixed-finance, mixed income apartment instantly. Plaintiff would accept a one-bedroom low-income apartment in a mixed-finance building, and if such a unit is not immediately available then she would accept a unit of any size that is immediately available while she is waiting for a mixed finance apartment to become available. CHA would pay all relocation expenses.

Respectively Submitted,

*/s/Maisha I. Hamilton*

Maisha I. Hamilton, Plaintiff

P.O. Box 4734, Chicago, IL 60680

Telephone: 773-243-9619

Proseme1@aol.com